The **ALBUQUERQUE PUBLISHING COMPANY, d/b/a The Albuquerque Tribune, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Civ. A. No. 87–2590.**

United States District Court, District of Columbia.

Dec. 11, 1989.

Bruce W. Sanford, Douglas E. Lee, Henry S. Hoberman, Baker & Hostetler, Washington, D.C. for plaintiff.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C. for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff, an Albuquerque, New Mexico, newspaper, brings this action under the Freedom of Information Act, 5 U.S.C. § 552 (1988) ("FOIA"), to compel the United States Department of Justice ("DOJ") to release certain documents that are responsive to plaintiff's FOIA request. Before the Court are the parties' cross-motions for summary judgment. The issues have been extensively briefed and the government has submitted two detailed affidavits and *Vaughn* indices describing all of the documents at issue.

### I. *Background*

On September 25, 1985, plaintiff submitted a written request[1] to the United States Drug Enforcement Administration ("DEA"), a component of DOJ, seeking all photographs, videotapes, and tape recordings made as part of the surveillance of Ken Gattas' residence, as well as all reports and documents relating to the contents of those materials. The surveillance of Gattas' residence came about after a mysterious 1983 fire at a well-known Albuquerque nightclub of which Gattas was part owner. Eventually, Gattas was prosecuted for arson and drug trafficking, but pled guilty during the trial to the drug charge and was sentenced to ten years in prison. As a result, not all of the evidence against him was presented at the trial. Plaintiff filed its FOIA request in the hopes of learning "the complete truth about the fire ... and the extent of drug trafficking" at the nightclub. *See* Brief of Plaintiff at 2-3.

On March 23, 1987, after an administrative appeal and remand, DEA released six redacted pages to plaintiff, but withheld the remaining ninety pages it had located in reliance on one or more FOIA exemptions. After plaintiff commenced this action, the government voluntarily filed a *Vaughn* index and accompanying affidavit. Subsequently, it was found that additional documents might be responsive to plaintiff's request. Upon further investigation in response to plaintiff's inquiries, DOJ discovered that DEA routinely destroys documents relating to past criminal investigations and that some of the information sought by plaintiff had been destroyed according to this procedure. In addition, DEA located photographs and two tape recordings responsive to plaintiff's request. Accordingly, in the spring of 1988, the government filed a supplemental *Vaughn* index and affidavit. At the same time, it released an additional nine redacted pages originally withheld in their entirety.

DEA has withheld information covered by plaintiff's request on the basis of FOIA exemptions 2, 7(C), 7(D), 7(E), and 7(F).[2] Plaintiff challenges the sufficiency of the agency's affidavits and indices[3] and the adequacy of its search for items responsive to plaintiff's request. For the reasons explained below, the Court will defer ruling on the agency's exemption 7(E) claim until

---

1. The request was made by Pam Maples, at that time an investigative reporter for The Albuquerque Tribune.

2. DEA's original assertion of exemption 3 was subsequently withdrawn. *See* Opposition and Reply Brief of Defendant at 1 n. 1.

3. The First and Second Bordley Affidavits and their attachments constitute the *Vaughn* indices.

after we have conducted an *in camera* inspection of the relevant materials. In all other respects, we find plaintiff's challenges without merit and conclude that the agency is entitled to summary judgment.

## II. *The Sufficiency of the Vaughn Indices*

■ The burden of establishing that this information falls within one of these exemptions lies with the agency. *Yeager v. DEA*, 678 F.2d 315, 320 (D.C.Cir.1982) (*citing* 5 U.S.C. § 552(a)(4)(B)). To meet this burden, the agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 251 (D.C.Cir.1977) (citations omitted); *see also Yeager*, 678 F.2d at 320 (citation omitted). The government's affidavits and ·indices must be sufficient "to allow us to make a reasoned determination that" DEA correctly invoked the exemptions. *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980).

Plaintiff asserts that DEA has failed to justify nondisclosure of the information plaintiff seeks. Specifically, plaintiff claims that the agency's *Vaughn* indices "do not describe the materials with reasonable specificity and therefore do not provide the Court or plaintiff a context in which to evaluate or challenge the claimed exemption." Brief of Plaintiff at 12. In addition, plaintiff contends, these filings fail to provide a sufficiently detailed analysis of the claimed exemptions and their relevance to particular documents. *Id.* at 13.

Except with respect to exemption 7(E), we disagree. Below, we first consider these challenges in the context of each claimed exemption. Next we address plaintiff's general assertion that the format of the agency's indices and affidavits is unacceptable.

## A. *Exemption 2*

■ Exemption 2 authorizes an agency to withhold from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). The government has claimed this exemption with respect to internal DEA markings and phrases regarding the treatment and distribution of DEA documents requested by plaintiff. As is customary practice at DEA, most of the pages involved bear "informant identifier codes" and many bear "violator identifiers." First Bordley Aff. at 4. The informant identifier codes "provide sensitive information about individuals who cooperate with DEA in carrying out its law enforcement functions." *Id.* at 5. The violator identifiers refer to the priority of DEA investigations, types of criminal activities, geographical areas, types of controlled substances involved, and violator ratings. *Id.* at 4. According to DEA, if disclosed, these codes could be deciphered and used to thwart DEA's investigative and enforcement efforts. *Id.*

The informant codes plainly fall within the ambit of exemption 2. *Lesar v. United States Department of Justice*, 636 F.2d 472, 485–86 (D.C.Cir.1980). In *Lesar*, the Court of Appeals held that "[t]he means by which the FBI refers to informants in its investigative files is a matter of internal significance in which the public has no substantial interest." *Id.* at 485–86. We believe that this reasoning applies to the violator codes as well. The public has no legitimate interest in gaining information that could lead to the impairment of DEA investigations.[4]

## B. *The "Law Enforcement" Exemptions*

The government has also invoked four of the seven "law enforcement" exemptions described in 5 U.S.C. § 552(b)(7). That subsection authorizes an agency to withhold, *inter alia:*

records or information compiled for law enforcement purposes, but only to the

---

**4.** Even if such information is of legitimate public interest, the government has made a sufficient showing that disclosure would risk cir-

cumvention of lawful agency regulation. *See Founding Church of Scientology of Wash., D.C. v. Smith*, 721 F.2d 828, 830 n. 4 (D.C.Cir.1983).

extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State [or] local ... agency or authority ... which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations ..., or (F) could reasonably be expected to endanger the life or physical safety of any individual....

5 U.S.C. § 552(b)(7). It is undisputed that the documents responsive to plaintiff's request are law enforcement records compiled by a criminal law enforcement authority in the course of a criminal investigation. The question before this Court, therefore, is whether the other statutory requirements are met.

1. *Exemption 7(C)*

DEA claims that portions of the documents contain third party information— "names, addresses and phone numbers which would reveal the identity and disclose information about persons who were implicated, involved or associated with" the surveillance of Gattas' residence. First Bordley Aff. at 6. DEA asserts that disclosure of the identity of these individuals, "whether they were accomplices, other defendants, informants, [or] innocent third parties," would be an unwarranted invasion of their personal privacy. *Id.* The information could be construed, DEA claims, to mean "that otherwise innocent persons are involved in illicit activities," and such persons might "suffer undue harassment and humiliation" as a result. *Id.*

■ In evaluating the agency's claim, we must balance the privacy interest in nondisclosure of the material against the public interest in its release. *United States Department of Justice v. Reporters Committee for Freedom of the Press,* —

U.S. —, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989). Our preliminary inquiry is whether a personal privacy interest is involved. *Reporters Committee,* 109 S.Ct. at 1476. We conclude that there is. *Reporters Committee* and decisions in this Circuit indicate that individuals have a substantial privacy interest in information that either confirms or suggests that they may have been subject to a criminal investigation. *See id.* at 1476–80; *Fund for Constitutional Government v. National Archives and Records Service,* 656 F.2d 856, 863–65 (D.C.Cir.1981); *Baez v. United States Department of Justice,* 647 F.2d 1328, 1338–39 (D.C.Cir.1980).

■ Once it is established that a personal privacy interest is implicated, the next inquiry is whether there are any countervailing factors that warrant an invasion of that interest. *See Reporters Committee,* 109 S.Ct. at 1480. In this regard, our fundamental focus must be on the relationship of the requested material to the basic purpose of FOIA to expose agency action to public scrutiny. *See id.* at 1481 (*quoting Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976)). Clearly, "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that ... purpose." *Id.* The purpose is not furthered, however, by disclosure of information about individuals "that is accumulated in ... governmental files but that reveals little or nothing about an agency's own conduct." *Id.*

■ The Supreme Court has suggested that in the typical FOIA case in which one citizen seeks information about another, "the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records." *Id.* This is certainly true in the present case. Plaintiff sought DEA's records of the surveillance of Gattas' residence in order to learn "the complete truth about the fire ... and the extent of drug trafficking at the night club." *See* Brief of Plaintiff at 2–3. Thus, by its own admission, plaintiff is not primarily interested in

DEA's conduct with respect to its investigation of Gattas and others, but rather in the information DEA obtained about these individuals and their activities as a result. This information does not relate to the basic purpose of FOIA " 'to open agency action to the light of public scrutiny.' " [5] *Rose*, 425 U.S. at 372, 96 S.Ct. at 1604.

Our conclusion is supported by the Supreme Court's discussion of its *Rose* decision in *Reporters Committee*. *Rose* involved a request by New York University law students for Air Force Honor and Ethics Code case summaries for a Law Review project on military discipline. Because the summaries contained information about how the Air Force Academy's disciplinary procedures "actually functioned," they were an appropriate subject of a FOIA request. *Reporters Committee*, 109 S.Ct. at 1482. However, all parties agreed that it was proper to delete identifying information about the particular cadets to whom the summaries related. *Id.* In *Reporters Committee*, the Supreme Court further explained:

> The deletions were unquestionably appropriate because the names of the particular cadets were irrelevant to the inquiry into the way the Air Force Academy administered its Honor Code. . . . If, instead of seeking information about the Academy's own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related, the public interest that supported the decision [to release information] in *Rose* would have been inapplicable.

*Id.* In the present case, the deletions were appropriate because third party information is irrelevant to an inquiry into the way DEA conducts its investigations. Hence, the agency's claim to exemption 7(C) is sustained.[6]

## 2. Exemption 7(D)

██ Under exemption 7(D), DEA has withheld material it claims would reveal

---

5. *See* Comment, The Freedom of Information Act's Privacy Exemption and the Privacy Act of 1974, 11 Harv.Civ.Rts.–Civ.Lib.L.Rev. 596, 608 (1976) ("No statement was made in Congress that the Act was designed for a broader purpose such as making the government's collection of data available to anyone who has a socially useful purpose for it.") (*cited in Reporters Comm.*, 109 S.Ct. at 1481 n. 20)

6. *Reporters Committee* categorically held that when a request seeks law enforcement records about private citizens that an agency is merely storing, rather than "official information" about the agency, disclosure can reasonably be expected to result in an unwarranted invasion of personal privacy. 109 S.Ct. at 1485. We might have rested our decision on this holding, but decline to do so because DEA's indices and affidavits do not specify whether any of the information concerns "public figures." Plaintiff argues that this lack of detail is fatal to DEA's claim. Plaintiff theorizes that because "public figures" may have a reduced interest in privacy, the balance between the privacy interest and the public interest may be tipped in favor of disclosure. *See* Brief of Plaintiff at 14 n. 3.

Admittedly, the government's filings might have been more specific. But greater specificity might have impinged on the privacy interests of individuals which the exemption was designed to protect. Even assuming that "public figures" are involved, however, we are satisfied for two reasons that the exemption was properly claimed. First, while a "public figure's" interest in privacy may be somewhat diminished, "the degree of intrusion occasioned by disclosure necessarily depend[s] upon the character of the information in question." *Fund for Const. Gov't*, 656 F.2d at 865. In *Fund,* the Court of Appeals held that a significant invasion of privacy would result from disclosure of the fact that an unindicted "public figure" had been investigated for suspected criminal activity. *Id.*

As DEA has explained, material being withheld in this case "would reveal the identity [of] and disclose information about persons who were implicated, involved or associated with" the surveillance of Gattas' residence. First Bordley Aff. at 6. The information could be construed to mean that "otherwise innocent persons are involved in illicit activities. . . ." *Id.* Such an intrusion would be comparable to that protected against in *Fund.* In addition, here, as in *Fund,* disclosure might "produce the unwarranted result of" forcing individuals "to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings." *Fund,* 656 F.2d at 865 (citation omitted).

Second, even a diminished privacy interest would not be outweighed by the public interest in this case. As we have stated above, disclosure of the third party information plaintiff seeks would not further the basic purpose of FOIA to expose agency action to public scrutiny. *Rose,* 425 U.S. at 372, 96 S.Ct. at 1604; *see Reporters Comm.,* 109 S.Ct. at 1482. Thus, the public interest in disclosure does not outweigh the clear interests in privacy.

the identity of state and local law enforcement officials who acted as confidential sources in the course of the Gattas investigation. First Bordley Aff. at 7. It also relies on the exemption to withhold information provided in confidence by those sources, *id.* at 6–7, as well as two tape recordings made by a wired informant.[7] Second Bordley Aff., Ex. 2G at 3–4.

After a careful examination of the indices and affidavits, we are satisfied that the exemption was properly invoked. Plaintiff does not dispute that information relevant to the investigation was obtained from various confidential sources,[8] but it does challenge DEA's claim that in some instances, in order to protect the information itself, the entire document had to be withheld. The statute plainly protects this information from disclosure. *See* 5 U.S.C. § 552(b)(7)(D); *see, e.g., Shaw v. FBI*, 749 F.2d 58, 61 (D.C.Cir.1984); *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1492 (D.C.Cir.1984). The exemption obviously applies to the two tape recordings, which consist entirely of information obtained from a confidential, wired informant. With respect to the other documents, plaintiff's challenge turns on whether the protected information is segregable from non-exempt information, an issue we address separately below.

### 3. *Exemption 7(E)*

■ As construed in the Conference Report accompanying the 1974 FOIA amendments and case law in this Circuit, this exemption pertains to investigative techniques and procedures generally unknown to the public. *See Malloy v. United States Department of Justice*, 457 F.Supp. 543, 545 (D.D.C.1978); House Comm. on Gov't Operation and Senate Comm. on the Judiciary, Freedom of Information Act and Amendments of 1974, 94th Cong., 1st Sess. 229 (Joint Comm.Print 1975). DEA relies on this exemption to withhold certain information it believes would disclose criminal investigative techniques not commonly known to the general public.

However, the agency provides the Court with insufficient information about the nature of the techniques.[9] We cannot, therefore, make a reasoned determination as to whether the exemption was properly invoked. Accordingly, we will examine this material *in camera.*

We wish to provide the government with some guidance in its preparation of this material for our review. Accordingly, we emphasize that our recent decision to unseal the government's *in camera* affidavit was based on the fact that we saw nothing exceptional or secret about the techniques it described—namely, the use of wired informants and "bugs" secretly placed in rooms that are under surveillance. Anyone who is familiar with the media, both television and print, is aware that the police use these and similar techniques in the

---

7. DEA also claims that exemptions 7(C), 7(E), and 7(F) apply to these tape recordings. Second Bordley Aff., Ex. 2G at 2. Because we hold that the tapes were properly withheld under exemption 7(D), we need not address the applicability of these other exemptions to this material.

8. It is well-settled that state and local law enforcement agencies can qualify as confidential sources. *See* 5 U.S.C. § 552(b)(7)(D); *see, e.g., Shaw v. FBI*, 749 F.2d 58, 62 (D.C.Cir.1984); *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1491–92 (D.C.Cir.1984).

9. In each instance, the deleted material is classified as "LAW ENFORCEMENT TECHNIQUE/INVESTIGATIVE METHOD" and its contents described as "INVESTIGATIVE TECHNIQUE NOT COMMONLY KNOWN TO THE PUBLIC." The accompanying affidavit simply states that release of "[s]uch techniques ...

would not only render these techniques useless against the criminal element, but would also jeopardize the well-being of police officers and Special Agents." First Bordley Aff. at 8. Nowhere does the agency describe the techniques in any greater detail.

These blanket assertions are "patently inadequate to permit a court to decide whether the exemption was properly claimed...." *Coastal States*, 617 F.2d at 861; *see also Pratt v. Webster*, 508 F.Supp. 751, 760–61 (D.D.C.1981), *rev'd on other grounds*, 673 F.2d 408 (D.C.Cir.1982). In order to make a reasoned determination that the exemption was properly claimed, we first must know more about the techniques at issue. *See Coastal States*, 617 F.2d at 861; *Pratt*, 508 F.Supp. at 760–61. Only then will we be in a position to evaluate whether the techniques are generally unknown to the public.

course of criminal investigations. DEA's position in this respect disregards reality. Therefore, the government should avoid burdening the Court with an *in camera* inspection of information pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television. These would include, it would seem to us, techniques such as eavesdropping, wiretapping, and surreptitious tape recording and photographing. Instead, the government should release such information to plaintiff voluntarily.

### 4. *Exemption 7(F)*

■ In reliance on this exemption, DEA has withheld "[t]he names and identities of DEA special agents, Supervisory Special Agents, and other law enforcement officers." First Bordley Aff. at 8. In a covert capacity, these individuals "routinely approach and associate" with "known violators," many of whom are armed and "have known violent tendencies." *Id.* According to DEA, past release of agents' identities has "resulted in several instances of physical attacks, threats, harassment, and attempted murder of DEA personnel." *Id.* It therefore believes that disclosure in this instance "could reasonably be expected" to result in "similar abuse." *Id.* at 8–9.

We agree. DEA's first affidavit and index are sufficiently detailed for us to make a reasoned determination that the exemption was properly invoked. *See Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir.1977) (per curiam); *Docal v. Bennsinger,* 543 F.Supp. 38, 48 (M.D.Pa.1981). That DEA has established the requisite nexus between disclosure and possible harm to its personnel is beyond question. Moreover, the deletions could not have been more narrowly tailored. In each instance, only the names of law enforcement personnel were withheld.

### C. Segregability

■ FOIA provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the [exempt] portions...." 5 U.S.C. § 552(b). An agency should provide the reasons behind its conclusion that exempt and non-exempt material are non-segregable. *See Mead Data,* 566 F.2d at 261. Plaintiff asserts generally that the government has failed to satisfy this burden. *See* Brief of Plaintiff at 14, 15–16.

■ We again disagree. DEA claims it withheld entire pages only where they could not "be reasonably segregated without identifying third parties, confidential sources of information, information provided by confidential sources and the names of law enforcement officers." First Bordley Aff. at 9. We note that this rationale implicates exemptions 7(C), 7(D), and 7(F), and that these exemptions require only that disclosure "could reasonably be expected" to result in the specified harm. The agency's burden must be read in light of this standard, which is more flexible than the stricter "would" standard that formerly applied. *See Reporters Committee,* 109 S.Ct. at 1473 n. 9 (discussing effect of 1986 FOIA amendments).

The agency has met its burden. It explains, for example, that with respect to exemption 7(D) information:

> [M]ore often than not, the narrative text within a page discusses dates, locations, and circumstances which, when considered in context by a reader familiar with them, such as an individual with access to the remainder of his unexcised file, would enable that reader to deduce the identity of the confidential source. In this situation, non-exempt information may be hard to discern, and what may seem to be an otherwise segregable portion may enable the requester to deduce exempt information. Accordingly, in those circumstances DEA withholds the entire page.

First Bordley Aff. at 7. This explanation is sufficient, in both detail and logic, to persuade us that in many instances, information obtained in confidence is so intertwined with non-exempt information that the entire document must be withheld.

While "[t]he precise meaning of the term 'reasonably' when used in conjunction with 'segregable' has not yet been settled,"

courts in this Circuit "[look] to a combination of intelligibility and the extent of the burden in 'editing' or 'segregating' the non-exempt material." *Yeager,* 678 F.2d at 322 n. 16 (*citing Simpson v. Vance,* 648 F.2d 10, 17 (D.C.Cir.1980); *Mead Data,* 566 F.2d at 261 & n. 55)). We have examined the nine documents, originally withheld in their entirety, that upon re-review DEA has released to plaintiff in redacted form. Suffice it to say that these documents are anything but intelligible. The information revealed is, at best, minimally enlightening.[10] *See* Second Bordley Aff., Ex. 2F. In light of this evidence and the explanations in the affidavits, we hold that DEA was justified in withholding certain pages in their entirety.

D. The Format of the Agency's Filings

██ The Court now addresses plaintiff's general assertion that the format of DEA's indices and affidavits is inadequate. The indices follow a systematic organization. For each page or portion thereof withheld from plaintiff, DEA in great detail provides the date of the document, its sender and recipient, its purpose, whether information was deleted from the top, middle, or bottom of the page, the nature of the deleted information, and the exemption claimed for each deletion. Moreover, each index is accompanied by an affidavit that describes the nature of the withheld information in more detail and explains the basis for DEA's claim that each exemption applies to each type of information withheld. In our judgment, plaintiff was not entitled to more.

As is clear under *Keys v. United States Department of Justice,* 830 F.2d 337, 349–50 (D.C.Cir.1987), this combination of indices and affidavits is acceptable. In *Keys,* the requester claimed that the agency's *Vaughn* index was insufficient because it failed " 'to identify the information that had been blacked out *on each specific document* or to explain why that information qualified for an exemption....' " *Keys,*

830 F.2d at 349 (quoting Brief for Appellant at 16) (emphasis added in Court of Appeals' opinion). The Court of Appeals emphatically rejected the contention that an agency's index must provide "an individualized justification for every single deletion" or fully repeat, at each place of deletion, the more detailed discussion provided in an accompanying affidavit. *Id.* The *Keys* court indicated the propriety of using aptly defined generic terms in a *Vaughn* index. *See id.* It stated that the requester's approach "would require either ... phony individualization or a degree of detail that would reveal precisely the information that the agency claims it is entitled to withhold," and "would waste ink and paper for no material advantage to anyone." *Id.* (parenthetical omitted).

As in *Keys,* we find that together the affidavits and indices accomplish the functions of a *Vaughn* index. Each deletion is correlated specifically and unambiguously to the corresponding exemption, each exemption is adequately explained by functional categories, the affidavits place the material into its historical and investigative context, and any more specificity might well entail disclosure of the very information withheld. *Id.* at 349–50. Accordingly, we reject plaintiff's challenge to the format of DEA's filings.

III. *The Adequacy of the Government's Search*

██ After the parties learned that material possibly responsive to plaintiff's FOIA request had been destroyed according to routine DEA procedure, plaintiff attempted to conduct discovery on this matter. Plaintiff apparently was not satisfied with DEA's sworn statement that routine destruction of evidence is necessary to combat "a serious problem as to storage space" and that the destruction "had no relationship to Plaintiff's FOIA request." Second Bordley Aff. at 3, 4. We effectively precluded this discovery when, on Sep-

---

**10.** The documents released appear to be one page DEA summaries of information gathered in the course of the Gattas investigation. These redacted documents reveal little more than that DEA obtained several cassette recordings and photographs on various dates. The documents do not reveal the identities of any individuals or describe the contents of the photographs or recordings or how they were obtained. *See* Second Bordley Aff., Ex. 2F.

tember 21, 1988, we denied plaintiff's motion to compel and granted DOJ's motion for a protective order. Our Order was based on the fact that plaintiff had provided no evidence to call the agency's explanation into question and was attempting to engage in a "fishing expedition."

DEA's affidavits, particularly the Second Bordley Affidavit, demonstrate that the agency has conducted a search reasonably calculated to uncover all responsive documents.[11] *See Weisberg v. United States Department of Justice,* 705 F.2d 1344, 1350–51 (D.C.Cir.1983). Agency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence and discoverability of other documents. *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981) (per curiam) (*citing Goland v. CIA,* 607 F.2d 339, 355 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

Nonetheless, plaintiff claims that a genuine issue of fact exists as to the adequacy of DEA's search. Unfortunately for plaintiff, however, it comes no closer to calling the agency's search into question now than it did over a year ago. Plaintiff's generalized and speculative assertions utterly fail to rebut DEA's showing of adequacy, and hence cannot preclude summary judgment for the agency in this case. *See Meeropol v. Meese,* 790 F.2d 942, 953–54 (D.C.Cir. 1986) (requester's unsubstantiated assertions insufficient to raise material question of fact as to adequacy of search); *Weisberg,* 745 F.2d at 1486–87 (agency's affidavits withstood requester's "generalized attack"); *Ground Saucer,* 692 F.2d at 772–

73 (unadorned speculation does not preclude summary judgment).

### IV. *Conclusion*

Based on the foregoing, the Court holds:

1) that the agency has sufficiently demonstrated:

   a) that it properly invoked exemptions 2, 7(C), 7(D), and 7(F) with respect to the information it has withheld; and

   b) that it conducted an adequate search for documents responsive to plaintiff's request;

2) that plaintiff has failed to rebut these showings; and

3) that an *in camera* inspection of material withheld under exemption 7(E) is necessary before the Court can rule on the propriety of the agency's claim to that exemption.

Accordingly, we grant the agency's motion for summary judgment and deny the plaintiff's motion for summary judgment in all respects except insofar as those motions concern exemption 7(E). An Order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the oppositions thereto, and the entire record herein, and for the reasons stated in an accompanying Memorandum Opinion entered this day, it is by the Court this 11th day of December, 1989,

ORDERED that defendant's motion for summary judgment is granted with respect to all materials as to which exemptions 2, 7(C), 7(D), and 7(F) are claimed; it is

---

**11.** The Second Bordley Affidavit explains:

> The routine destruction of evidence ..., which took place in Albuquerque, New Mexico, had no relationship to Plaintiff's FOIA request, which was processed in Washington, D.C., and was not intended in any way to defeat or avoid it. The specialist assigned [to plaintiff's] case had no connection with the destruction of evidence. ... Routine destruction ... takes place because of the large volume of evidence that is amassed by DEA due to the extensive drug prosecutions across the country. There is a serious problem as to storage space.

> ....

> Upon receipt of an [sic] FOIA request ... DEA searches its investigative reporting and filing system of records. Initially this search is conducted by computer.... If this search reveals that [responsive] files exist ..., these files are then searched for responsive documents and other records. Those documents are compiled for processing.... A thorough search was made of DEA file no. 85–0025, the investigative file relating to Ken Gattas and others. All records responsive to Plaintiff's request have been located and processed.

Second Bordley Aff. at 3, 5.

ORDERED that defendant, within twenty (20) days of the date of this Order, shall submit for an *in camera* inspection those materials, which comprise approximately forty-five (45) pages, as to which exemption 7(E) also is claimed, it being understood that only those portions for which exemption 7(E) is claimed need be revealed on the pages submitted; it is

ORDERED that plaintiff's motion for summary judgment is denied in all respects except as to materials withheld in reliance on exemption 7(E); and it is

ORDERED that this case, except as it concerns those materials to be submitted for an *in camera* inspection, is dismissed with prejudice.