**Guy Thomas FISHER, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 89–374 (CRR).**

United States District Court,
District of Columbia.

Aug. 15, 1991.

**8**

Guy Thomas Fisher, pro se.

Jay B. Stephens, U.S. Atty., John D. Bates and John C. Martin, Office of the U.S. Atty., Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

This is a suit by a prisoner seeking information related to himself and eight other individuals pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").[1]

---

**1.** The plaintiff also asserts that the Privacy Act, 5 U.S.C. § 552a, supports his claim, but fails to    elaborate.

Before the Court are cross-motions for summary judgment[2] on whether the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Agency ("DEA") properly withheld a number of documents in whole or in part. After careful consideration of the instant motions, the accompanying memoranda, the underlying law, and the entire record herein, the Court shall deny the plaintiff's motion for summary judgment, grant the defendant's motion for summary judgment, and dismiss this case from the dockets of the Court.

## I. Background

The plaintiff submitted FOIA requests to the New York City office of the Federal Bureau of Investigation ("FBINY") and to FBI Headquarters ("FBIHQ") seeking information about himself and a number of other individuals.[3] He also made a similar FOIA request to the DEA.[4] In response to plaintiff's requests, the FBI and DEA released certain information and withheld other material in whole or in part pursuant to FOIA Exemptions 2, 5, 6, and 7.

The FBI located 17 FBINY "cross-reference" files in response to the plaintiff's FOIA request.[5] Those files constitute 37 pages of which the FBI released 4 pages in their entireties, released 8 pages with re-

dactions of allegedly exempt information, and withheld 23 pages in their entireties. Moreover, the FBI located 2 FBIHQ cross-reference files. All nine pages of the files were released to the plaintiff with redactions of exempt material. Finally, the FBI located three "main files" totaling 101 pages. The FBI withheld 67 of these pages in their entireties and released 34 pages to plaintiff with redactions. Aside from information about himself, the plaintiff requested information about eight named individuals, but failed to provide any authorization from those individuals for release of the information.

The DEA searched for information responsive to plaintiff's request and processed documents referred to it by the FBI. Of the 88 pages located, the DEA withheld 63 pages in their entireties and released twenty-five pages with redactions of exempt material. The plaintiff also requested that the DEA provide information concerning several third parties whom he claimed were listed in DEA's UID Narcotic Violators Compendium. The DEA denied plaintiff's request pursuant to FOIA Exemptions 2, 7(C), 7(D) and 7(F).[6] Thereafter, by letter dated March 21, 1989, the DEA advised plaintiff that he would be required to submit waivers or authorizations from the individuals concerned before

---

2. On June 17, 1991, the plaintiff filed two motions in addition to his May 13, 1991 motion for summary judgment. The plaintiff entitles these two motions "Plaintiff's Motion for Judgment on the Merits of the Pleadings" and "Motion for Declaratory Judgment." However, because the memoranda accompanying those motions appear intended to further support plaintiff's cross-motion for summary judgment and to reply to defendant's opposition to plaintiff's motion for summary judgment, the Court shall treat them as such.

3. By letters dated December 10, 1987, the plaintiff requested from the New York City FBI office and FBI Headquarters information:

pertaining to the investigation and prosecution of criminal case number: SS83Cr.00150-01(MO) ..., [including] all the information relating to the background and development of this case through its termination. I would further like all the field notes; 302's, etc, and all the field offices of the FBI checked for any additional information pertaining to same and ... all the information contained in the FBI Identification record and rap sheet.

Defendant's Statement of Material Facts as to Which There is No Genuine Dispute ("Def. Facts") ¶¶ 1, 3. By letter dated March 8, 1988, plaintiff requested all information concerning himself and eight named individuals resulting from investigations of the FBI. *Id.* ¶ 5.

4. By letter dated December 1, 1987, plaintiff requested all information pertaining to his criminal trial in Federal District Court, Southern District of New York. Def. Facts ¶ 30. In addition, by letter dated July 28, 1988, plaintiff requested information on "UID Black Narcotic Violators Compendium" and personal information on several third parties. *Id.* ¶ 44.

5. "Cross-reference" files are criminal investigation files of persons other than the plaintiff, but which refer to the plaintiff by name and/or contain information about the plaintiff.

6. The DEA never conducted a search for the third party information requested by the plaintiff. Magruder Decl. ¶ 12.

a search for responsive records could be made, and that he would be required to pay search fees. The plaintiff has not submitted the required waivers. *See* Def. Facts ¶ 48.

## II. Analysis

■ The Freedom of Information Act, 5 U.S.C. § 552, as amended, generally provides citizens the right of access to federal agency records, except insofar as they are protected from disclosure by one of nine exemptions or three law enforcement record exclusions. "The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). "Disclosure, not secrecy, is the dominant object of the Act," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), and the limited exemptions to FOIA are construed narrowly to provide maximum access consonant with the overall purpose of the Act. *See Yeager v. DEA*, 678 F.2d 315, 320 (D.C.Cir.1982). Yet, the goal of an informed citizenry must be balanced against other vital societal aims, which are specifically embodied in the exemptions to FOIA.

### A. FOIA Exemptions Asserted by the Defendants

■ The Court will examine the FOIA exemptions asserted by the government *seriatim.*[7] First, both the FBI and DEA asserted FOIA Exemption 2 to withhold information related to internal agency rules and practices—internal symbols and markings on various documents. *See* Lieb. Decl. II at 8–12; Magruder Decl. ¶ 29(a). Exemption 2 protects from disclosure records "related. solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 covers internal matters which are so routine or trivial that they could not be "subject to ... a genuine and significant public interest." *Rose*, 425 U.S. at 369, 96 S.Ct. at 1603.[8] Because the internal symbols and markings redacted by the defendants are not of significant public interest, the agencies properly asserted Exemption 2.

Second, the DEA asserted FOIA Exemption 5 to redact the opinions of a DEA Special Agent about the possible future activities of a drug trafficker and the need to relocate certain individuals, as well as the comments of another agent about projected drug trafficking arrests. These comments were directed to DEA supervisors. Magruder Decl. ¶ 29(b).

■ FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). "Congress apparently did not intend 'inter-agency' and 'intra-agency' to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process." *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C.Cir.1980). "[T]he ultimate purpose of [the deliberative process] privilege is to prevent injury to the quality of agency decisions." *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29 (1975). In particular, the deliberative process privilege furthers three policy goals: to promote open, candid discussions on policy matters between subordinates and superiors; to protect against premature disclosure of proposed policies before they are adopted in final form; and to prevent public confusion that might be caused by disclosure of reasons and ratio-

---

7. In support of their motion for summary judgment, the defendants submitted two Declarations by David R. Lieberman, a Special Agent of the FBI, dated August 30, 1989 ("Lieb. Decl. I") and December 19, 1990 ("Lieb. Decl. II"), as well as the Declaration of Clayton L. Magruder, a Freedom of Information/Litigation Specialist at the DEA. ("Magruder Decl.").

8. Exemption 2 also serves to relieve the agency from the administrative burden of processing information "when internal matters are not likely to be the subject of public interest." *Martin v. Lauer*, 686 F.2d 24, 34 (D.C.Cir.1982).

nales that were not ultimately the grounds for the agency's action. *See, e.g., Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C.Cir.1982); *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C.Cir.1980); *Jordan v. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C.Cir.1978) (en banc).

■ To justify nondisclosure under the deliberative process privilege, an agency must show the record withheld is (1) "predecisional," that is, "antecedent to the adoption of agency policy," *Jordan*, 591 F.2d at 774, and (2) deliberative, or "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). Here, the withheld information was deliberative and antecedent to certain law enforcement decisions, and therefore the defendants properly invoked Exemption 5.

■ The defendants asserted Exemption 7 to protect much of the withheld information. Exemption 7 shields:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7), *as amended* by Pub.L. No. 99–570 § 1802 (1986).

Both the FBI and DEA asserted Exemption 7(C) and (D) to withhold the names of law enforcement personnel, third parties, suspects and individuals who supplied information to the respective law enforcement agencies on a confidential basis, and information supplied by confidential sources. *See* Lieb. Decl. II at 8, 13–27; Magruder Decl. ¶ 29(c)–(d). In 1986, Congress broadened the provisions of Exemption 7, "with the avowed purpose of 'enhanc[ing] the ability of all Federal law enforcement agencies to withhold additional law enforcement information ..., to broaden the reach of this exemption and to ease considerably a Federal law enforcement agency's burden in invoking it.'" *Irons v. FBI*, 811 F.2d 681, 687 (1st Cir.1987) (quoting 199 Cong. Rec. S16504 (daily ed. October 15, 1986) (statement of Sen. Hatch)). The defendants have justified applying Exemption 7(D) by "demonstrat[ing] that the information was provided in confidence at the time it was communicated" and that disclosure could reasonably be expected to reveal the identity of confidential sources. *Dow Jones & Co. v. Dep't of Justice*, 908 F.2d 1006, 1010 (D.C.Cir.1990) (citations omitted); *Irons*, 811 F.2d at 685. Moreover, the defendants have demonstrated that privacy concerns outweigh the plaintiff's need to access the records and whatever public interest, if any, there would be in disclosure. *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 1483–85, 103 L.Ed.2d 774 (1989). Accordingly, the defendant properly invoked Exemption 7(C) and (D).

■ Moreover, the DEA asserted Exemption 7(F) to withhold the names of DEA law enforcement personnel to protect the safety of those individuals. *See* Magruder Decl. ¶ 29(e). Under the circumstances, disclosure of the agents' identities could reasonably be expected to endanger their lives and personal safety and therefore the DEA properly invoked Exemption 7(F).

*See Atkins v. Dep't of Justice*, No. 88–842, slip. op. at 10 (D.D.C. Feb. 26, 1990); *Albuquerque Pub. Co. v. Dep't of Justice*, 726 F.Supp. 851 (D.D.C.1989).

■ Furthermore, the FBI asserted Exemption 7(E) to withhold information compiled for law enforcement purposes, the disclosure of which would reveal investigative techniques and procedures, thereby impairing the FBI's future effectiveness. Lieb. Decl. at 28. Because disclosure of the information within the context of the documents at issue could alert subjects in drug investigations about techniques used to aid the FBI, *id.*, the exemption was properly invoked. *See United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir.), *cert. denied*, 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986); *Fernandez v. Dep't of Justice*, No. 88–1539, slip op. (D.D.C. Feb. 5, 1990).[9]

■ Finally, the FBI and DEA properly responded to the plaintiff's request for law enforcement investigatory files and information concerning specified third parties. The plaintiff failed to provide written authorizations from the named individuals as requested. Therefore, the FBI stated that it could neither admit or deny the existence of the information sought. Lieb. Decl. II at 28–32. The DEA denied plaintiff's request, Magruder Decl. ¶¶ 11–12, 19–22, and because plaintiff failed to submit written authorizations and search fees, the DEA effectively neither confirmed or denied the existence of the requested information. The refusal to provide the plaintiff with the information sought was appropriate because even confirming the existence of the information would constitute a clearly unwarranted invasion of personal privacy. *Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir.1983).

**B. Plaintiff's Contentions**

The plaintiff does not challenge the exemptions asserted by the defendants, the adequacy of their search, or their description of the information withheld. Because the plaintiff essentially concedes those points and because his motion for summary judgment is devoid of factual support, the plaintiff's request for the withheld information must be denied.[10]

■ The plaintiff's primary complaint is that much of the requested information allegedly has been released to the news media, and he contends that therefore he is entitled to this information. However, the plaintiff fails to provide a scintilla of evidence that the media coverage was the result of a release of the requested information by the government to the press. Nor has the plaintiff demonstrated that any of the withheld information has been the subject of publicity so widespread as to warrant disclosure under the FOIA. *See Founding Church of Scientology, Inc. v. NSA*, 610 F.2d 824, 831–32 (D.C.Cir.1979). Moreover, even assuming, *arguendo*, that some of the withheld information has appeared in the press, the nondisclosure is proper because a disclosure from an official source of information previously released by an unofficial source would confirm the unofficial information and therefore cause harm to third parties. *See Simmons v. Dep't of Justice*, 796 F.2d 709, 712 (4th Cir.1986) ("release from an official source naturally confirms the accuracy of the previously leaked information"). Furthermore, public disclosure of some information does not necessitate the disclosure of additional information that is otherwise properly exempt from disclosure. *Sirota v. CIA*, 3 G.D.S. ¶ 83,261 (S.D.N.Y.1981)

9. Law enforcement agencies' "non-investigatory" law enforcement records, to the extent that they can be fairly regarded as reflecting techniques or procedures, are now entitled to categorical protection under Exemption 7. J. Franklin & R. Bouchard, *Guidebook to the Freedom of Information and Privacy Acts* § 1.10[6] at 1–157 (2d ed.1988).

10. Plaintiff makes two major arguments in his motion for summary judgment: that the defendants waived their rights to assert any FOIA exemptions by disseminating their files and systems of records to the general public during the sixteen-week criminal trial, and that collateral estoppel bars the defendants from withholding the requested information because they disclosed all of the information to the plaintiff during the criminal trial.

(citing *Fensterwald v. CIA*, 443 F.Supp. 667 (D.D.C.1978)).

The plaintiff also contends that during the sixteen-week trial in which he was a co-defendant, information now withheld by the defendants was disclosed. However, the plaintiff failed to reference a single document withheld by the defendants in whole or in part which might fall within this category, and has not demonstrated that any of the withheld information has been so publicized as to warrant disclosure under the FOIA. *See Founding Church of Scientology,* 610 F.2d at 831–32.

### III. Conclusion

For all of the foregoing reasons, the Court shall grant the defendants' motion for summary judgment and deny the plaintiff's motion for summary judgment.