Donald WILLIAMS, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

Civ. A. No. 90–2299 (CRR).

United States District Court, District of Columbia.

May 17, 1993.

Randall M. Dana, Ohio Public Defender, David Stebbins and Dale A. Baich, Asst. State Public Defender, Ohio Public Defender Com'n, Columbus, OH, for plaintiff.

Jay B. Stephens, U.S. Atty. for District of Columbia, John D. Bates and Michael Ambrosino, Asst. U.S. Attys., Washington, DC, for the Government.

Barbara Nicastro of Bethel & Nicastro, Washington, DC, for defendant Government Nat. Mortgage Ass'n.

## OPINION

CHARLES R. RICHEY, District Judge.

The Defendants in the above-captioned Freedom of Information Act ("FOIA") case have filed a Revised Motion for Summary Judgment. At issue in the case is whether the Defendants have conducted an adequate search for documents responsive to the Plaintiff's FOIA request, and whether certain withheld documents fall within FOIA exemptions relating to law enforcement records. Upon consideration of the Defendants' Re-

vised Motion for Summary Judgment, the Plaintiff's opposition thereto, the applicable law, and the record herein, the Court must grant the Defendants' Motion because the Defendants have now conducted an adequate search for responsive documents and have demonstrated that the withheld documents fall within FOIA exemptions (b)(7)(C) and (b)(7)(D).

## I. BACKGROUND.

The Plaintiff served as the Minister of Defense of the Afro Set in the late 1960s and early 1970s. The FBI considered the Afro Set "a black extremist organization" which sought the "complete take-over and control of the Black community" and promoted "hatred of white people and outside authority." Defendants' Motion for Summary Judgment, First Declaration of Regina Superneau, Exhibit 2, Part I, Doc. 8–96 at *2 ("First Superneau Declaration"). Because the Plaintiff was "an officer in an active black extremist group," the FBI initiated an investigation in 1970. First Superneau Declaration, Exhibit 2, Part I, Doc. 1.

In April and May of 1989, the Plaintiff requested all records pertaining to him in the files of the FBI Headquarters ("FBIHQ"), FBI's Cleveland Field Office ("CVFO"), and FBI's Cincinnati Field Office ("CIFO"). The CIFO found only one two-page document that referenced the Plaintiff, and withheld this document. See Complaint, Exhibit D. The CVFO search yielded a document that referenced the Plaintiff, which was also withheld. CVFO also disclosed the existence of an investigative file concerning the Plaintiff, but referred this file to FBIHQ for processing. See Complaint, Exhibit N. The Plaintiff was informed that 377 pages of material were in the FBIHQ file, and that 200 pages would be released, either in whole or in part. See Complaint, Exhibit K. The Plaintiff appealed the decisions of FBIHQ, CVFO and CIFO, and the Department of Justice Office and Information and Privacy (OIP) denied these appeals. The Plaintiff filed the instant suit shortly thereafter.

On January 10, 1991, the Defendants filed their first Motion for Summary Judgment, together with a Vaughn index and two Decla-

rations from Regina Superneau. Rather than filing an opposition to the Defendants' Motion, the Plaintiff filed a Motion for Further *Vaughn* indexing and a Motion for Discovery. On August 6, 1991, this Court ordered the Defendants to provide a more complete *Vaughn* index of the materials withheld. *See Williams v. FBI*, Civ. 90–2299, slip op., 1991 WL 163757 (D.D.C. Aug. 6, 1991). The Court also denied the Plaintiff's Motion for Discovery as to the underlying basis for the FBI's investigation of the Afro Set and found that the Defendants had offered a plausible rationale for the FBI's investigation of the Plaintiff's activities as the alleged Minister of Defense for the Afro Set. *Id.* at 3–8.

Pursuant to the Court's August 6, 1991 Order, the Defendants filed a more complete *Vaughn* index on September 30, 1991, together with a Third Declaration from Regina Superneau. The Plaintiff opposed the Motion for Summary Judgment and again challenged the adequacy of the Government's search and the completeness of the revised *Vaughn* index. Plaintiff filed four exhibits under seal, each of which the FBI allegedly did not produce despite the fact that each document mentioned the Plaintiff by name. According to the Plaintiff, these exhibits illustrated the inadequacy of the Defendants' search. Acknowledging the discrepancies in the record pointed out by the Plaintiff, the Court ordered the Defendants to account for what appeared to be the absence of two amended pages pertaining to Documents 26 and 28. *See Williams v. FBI*, Civ. 90–2299, slip op. (D.D.C. Dec. 13, 1991). The Court also directed the Defendants to explain why certain documents responsive to Plaintiff's FOIA request, which Plaintiff unearthed through his own investigation, did not appear to be produced or acknowledged by the Defendants in the *Vaughn* indices. *Id.*

On December 22, 1991, the Defendants filed a Fourth Declaration of Regina Superneau to address the Court's concerns regarding the agency's good faith and the adequacy of the agency's search. The Court subsequently denied the Defendants' initial Motion for Summary Judgment, without prejudice, because of the Defendants' failure to adequately explain why documents located in a search of the "reference" files at CVFO were not identifiable to the Plaintiff, as the Defendants claimed. *See Williams v. FBI*, Civ. 90–2299, slip op., 1992 WL 495018 (D.D.C. Apr. 13, 1992). The Court directed the Defendants to either produce the documents found through the search of the CVFO "see reference" files or explain why those documents were not identifiable to the Plaintiff. The Court also directed the Defendants to conduct a search of the "see reference" files at FBIHQ and CIFO, as well as any other files likely to contain documents responsive to the Plaintiff's initial FOIA request.

On May 27, 1992, the Defendant filed the Declaration of Angus Llewellyn ("Llewellyn Declaration"), setting forth the search of the "see reference" files as required by this Court's April 13, 1992, Order. For the search of the "see reference" files, the Defendants used the name of the Plaintiff, all of his known aliases, his position title ("Minister of Defense") with the Afro Set organization, his birthdate, birthplace, and social security number. Declaration of P. Grant Harmon, Jr., at 3 ("Harmon Declaration"). No new documents were discovered in the search of the "see reference" files of CIFO and CVFO. The FBIHQ search yielded thirty-six additional "see references" identifiable to the Plaintiff, three of which were contained in documents that had been sent from CVFO. Llewellyn Declaration at 2–3. The additional material was released, with certain redactions. The Defendants conducted a final search of all FBI records involving national organizations of which the Plaintiff might have been a member. Harmon Declaration at 4–5. The search revealed no new references identifiable with the Plaintiff.

On October 16, 1992, the Defendants filed a Revised Motion for Summary Judgment, asserting that the search for responsive documents was adequate, and the documents withheld in part or in whole fell within FOIA exemptions (b)(7)(C) and (b)(7)(D). The Plaintiff opposed the Motion, challenging the adequacy of the Defendants' search and asking the Court to conduct an *in camera* review of the withheld documents. The Court must first address the adequacy of the

search, and then considers the validity of the exemptions claimed by the Defendants.

## II. THE DEFENDANTS HAVE CONDUCTED A REASONABLE SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST.

■ The first question that the Court must consider is whether the search conducted by the Defendants for documents responsive to the Plaintiff's request was adequate. "The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990). In demonstrating the adequacy of the search, the Defendants may rely upon reasonably detailed affidavits submitted in good faith indicating that the extent and execution of the search were reasonable under the facts of the case. *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984).

■ In this case, the Defendants submitted in connection with their Revised Motion for Summary Judgment a number of Declarations by various officials familiar with the processing of FOIA requests. The Declarations indicate that the Defendant has now searched the General Indices of the FBI's Central Record System for CVFO, CIFO, and FBIHQ, for all information containing the name Donald Williams, variations of that name, aliases, and other possible identifiers. The retrieved information, both from the main files and the "see reference" files, was then reviewed to determine which entries were identifiable to the Plaintiff.

The Plaintiff raises one objection to the search for responsive documents. Specifically, the Plaintiff claims that the Defendants failed to adequately explain why some "see reference" files containing the Plaintiff's name were not identifiable to the Plaintiff. *See* Plaintiff's Supplemental Memorandum of Points and Authorities in Opposition to Defendants' Revised Motion for Summary Judgment, at 13. The Defendants have satisfactorily explained, however, the steps taken to ensure that all the documents (and only those documents) that actually referred to the Plaintiff were considered for release. *See* Defendants' Reply to Plaintiff's Opposition to Defendants' Revised Motion for Summary Judgment, at 5–6. Identifying factors considered by the Defendants included the name, alias, position title, birthdate, birthplace, and social security number. Harmon Declaration at 3. Consequently, any assertion by the Plaintiff that other responsive documents exist, in the absence of any supporting evidence, constitutes mere speculation on the Plaintiff's part. *See Weisberg,* 745 F.2d at 1486. The search conducted by the Defendant in response to the Plaintiff's request and by direction of the Court was made in good faith and was both adequate and reasonable under the circumstances of the case.

## III. THE WITHHELD INFORMATION IS ADEQUATELY DOCUMENTED AND FALLS SQUARELY WITHIN THE FOIA EXEMPTIONS WHICH PROTECT AGAINST UNWARRANTED INVASIONS OF PERSONAL PRIVACY AND SAFEGUARD CONFIDENTIAL SOURCES CONNECTED WITH LAW ENFORCEMENT ACTIVITIES.

The Defendants released a large amount of material responsive to the Plaintiff's FOIA request. They also withheld certain material pursuant to two of the FOIA exemptions. The *Vaughn* indices filed by the Defendants are well-prepared, and the Defendants clearly segregated and released non-exempt information contained within the same document with exempt material. *See* Llewellyn Declaration at 10; *Krikorian v. Dep't of State,* 984 F.2d 461, 466 (D.C.Cir.1993). The Defendants have satisfactorily pinpointed the non-exempt material within the responsive documents and also explained, when appropriate, that particular documents do not contain segregable non-exempt information and must be withheld in their entirety.

The Defendants withheld various portions of the responsive documents under FOIA

exemptions (b)(7)(C) and (b)(7)(D).[1] Both exemptions apply only to "records or information compiled for law enforcement purposes." Exemption (b)(7)(C) exempts records or information if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Exemption (b)(7)(D) exempts those records or information the release of which:

> could reasonably be expected to disclose the identity of a confidential source, .... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source....

5 U.S.C. § 552(b)(7)(D).

■ In order for the Defendants to properly withhold a record under either Exemption (b)(7)(C) or (b)(7)(D), the Defendants must first show that the record was compiled for a law enforcement purpose. To make such a showing, the Defendants must establish (1) that the record arose from an investigation related to the enforcement of federal law, and (2) that the agency can raise a colorable claim that the investigation is rationally related to one or more of the agency's law enforcement duties. *See Simon v. Department of Justice*, 980 F.2d 782, 783 (D.C.Cir.1992).

In this case, the Plaintiff argues that the investigation of Donald Williams was not lawful. However, the Court considered and rejected the same argument over two years ago in its Memorandum Opinion of April 6, 1991. As the Court stated then;

> The Plaintiff was a leader of an organization which the FBI, based upon information provided by its own confidential sources, believed posed a threat to the

security of the United States. The Plaintiff does not dispute that the FBI's suspicions about the Afro Set's involvement in fomenting racial tension and in murdering police officers had some basis in fact.... In light of the FBI's broad mandate to protect the internal security of the country and given the information available to the FBI about the Afro Set, surveillance of the Afro Set and its leaders was justified.... A person's affiliation with groups believed by the FBI to threaten the national security is often a legitimate basis to prompt an FBI investigation.

*Id.* at 6–7. The Plaintiff has introduced no new evidence or given the Court any cause to revisit this issue. Consequently, the Court maintains its previous conclusion that the records in this case arose from an investigation related to the enforcement of federal law, and that the investigation was rationally related to the Defendant's law enforcement duties. Thus, the Defendants have made their threshold showing to assert Exemption (b)(7),[2] and the Court must now consider whether the withheld records properly fall within Exemptions (b)(7)(C) or (b)(7)(D).

■ With respect to Exemption (b)(7)(C), the Defendants must show that the withheld information could reasonably constitute an unwarranted invasion of privacy. The Court, in evaluating an Exemption (b)(7)(C) claim, "must balance the privacy interests involved against the public interest in disclosure." *Safecard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1205 (D.C.Cir.1991). The Defendants in this case have asserted Exemption (b)(7)(C) to withhold a variety of information, specifically: (1) the identities of FBI agents and clerical personnel; (2) identities of other federal government employees; (3) identities of non-federal law enforcement officials; (4) identities of third parties who provided information dur-

---

**1.** The Defendants also withheld information based on exemption (b)(2), which exempts records or information "related solely to the internal personnel rules and practices of an agency." The Defendants used this exemption to withhold symbol numbers and file numbers used as internal identifiers for administrative control purposes. *See* First Superneau Declaration, at 17. The Defendants also asserted exemption (b)(7)(D) as justification for withholding these codes. Be-

cause the Court concludes that exemption (b)(7)(D) was properly asserted, *infra*, it need not consider whether exemption (b)(2) was properly applied in this case.

**2.** This showing also brings the information within Exemption j(2) of the Privacy Act, 5 U.S.C. § 552a. *See Simon v. Dep't of Justice*, 980 F.2d 782, 784 (D.C.Cir.1992).

ing the course of their employment; (5) names and identifying data regarding third parties; (6) identities of third parties who are subjects of an FBI investigative file; and (7) witnesses and third parties interviewed in the course of an FBI investigation. *See* Memorandum of Points and Authorities in Support of Defendants' [Revised] Motion for Summary Judgment, at 7.

The withholding of each of these categories of material pursuant to Exemption (b)(7)(C) is well-founded in the law. "Exemption 7(C) affords broad privacy rights to suspects, witnesses, and investigators ..." in criminal investigations. *Safecard Services, Inc.,* 926 F.2d at 1205. Obviously, any individual who participates in a law enforcement investigation has a strong privacy interest in keeping his or her name, together with any details that would tend to identify the individual, from the public view. "[T]he disclosure of records containing personal details about private citizens can infringe significant privacy interests." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 766, 109 S.Ct. 1468, 1478, 103 L.Ed.2d 774 (1989). Especially in the context of criminal investigations, government officials, and those individuals who cooperate with government officials, risk annoyance, harassment, and substantial danger if publicly identified. *Lesar v. United States Dep't of Justice,* 636 F.2d 472, 487 (D.C.Cir. 1980).

Individuals whose names are mentioned during the course of an investigation have an even greater privacy interest. "[A]n individual whose name surfaces in connection with an investigation may without more, become the subject of rumor and innuendo." *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,* 656 F.2d 856, 863 (D.C.Cir.1981) (quoting *Congressional News Syndicate v. United States Department of Justice,* 438 F.Supp. 538, 541 (D.D.C.1977)).

Given the substantial privacy interests in the information withheld in this case, the public interest in disclosure of the identity of the individuals must be great in order to justify release of the information. *No such public interest exists.* The Court has reviewed each assertion of Exemption (b)(7)(C)

and the Defendant's reliance on the Exemption was proper. The information contained in the withheld portions of the relevant documents will *not* "shed[ ] light on an agency's performance of its statutory duties...." *Reporters Committee for Freedom of the Press,* 489 U.S. at 773. Nor is the information "probative of an agency's behavior or performance." *Safecard Services, Inc.,* 926 F.2d at 1205. Absent evidence of such agency misconduct, an agency need not disclose the names and identifying descriptions of individuals supplying information to the agency in the law enforcement context. *See id.* at 1206. The Plaintiff in this case has come forward with no such evidence of misconduct, the privacy interest outweighs the public interest in disclosure, and the release of the withheld information could reasonably constitute an unwarranted invasion of privacy.

The Defendants also claim that they are entitled to withhold certain information under Exemption (b)(7)(D), the FOIA provision exempting from disclosure confidential sources and the information obtained therefrom. A person or agency is a confidential source if the person or agency provided information under an assurance of confidentiality, either explicit or inferred. *Birch v. United States Postal Service,* 803 F.2d 1206, 1212 (D.C.Cir.1986). Furthermore, a presumption exists that "information obtained by an agency during the course of a criminal investigation has been procured pursuant to an assurance of confidentiality." *Parker v. Dep't of Justice,* 934 F.2d 375, 378 (D.C.Cir.1991).

The Defendants assert Exemption (b)(7)(D) to withhold a variety of information, specifically: (1) source symbol numbers, source file numbers, and dates of contact with confidential sources; (2) the identity of and/or information furnished by an FBI source reporting on a regular basis; (3) named third parties who provided information and/or information provided by them under an implied or express promise of confidentiality; (4) identities and/or information provided by non-federal law enforcement agencies; and (5) identities and/or information from private institutions and non-law enforcement agencies.

■ As the Court has stated *supra*, the Defendant has established that the records in this case were created during the course of a criminal investigation. Consequently, a presumption of confidentiality arises. *Id.* The Plaintiff in this case has not only failed to overcome this presumption, he has put forward *no* argument or evidence to rebut the presumption. Furthermore, the Court concludes that the presumption of confidentiality is appropriate in this case. The documents containing withheld information were produced pursuant to FBI interviews with individuals who provided information relating to criminal investigations. The success of FBI investigations depends in large measure upon such information, which would not be forthcoming if the interviewees had ·to worry about possible "harassment, ridicule, or retaliation" from their participation. *Keys v. United States Dep't of Justice*, 830 F.2d 337, 345–46 (D.C.Cir.1987).[3] Thus, the Defendants have sustained their burden of showing, with as much detail as possible, that the withheld portions of the responsive records fall within Exemptions (b)(7)(C) and (b)(7)(D).

■ Finally, the Court must reject the Plaintiff's request to review the withheld portions of the documents *in camera*. *In camera* review of withheld documents is "generally disfavored." *Schiller v. National Labor Relations Bd.,* 964 F.2d 1205, 1209 (D.C.Cir. 1992). The Plaintiff has failed to come forward with any substantive evidence of bad faith on the part of the Defendants that would warrant such a review. The Plaintiff relies on a passage in this Court's Order of December 13, 1991, in support of his allegations of bad faith. However, the Plaintiff misconstrues the contents of the December 13, 1991, Order. The Court issued the Order because the Defendants had failed to explain the apparent omission of two pages from Document 28. As the Court stated, "[t]his alleged omission raises a question as to the adequacy and good faith of the agency's search...." Order, at ·3.

The Court recognized, however, that the two omitted pages might have been included as part of Document 26. The Fourth Declaration of Regina Superneau, filed on December 20, 1991, confirmed that the pages were part of Document 26, and the ambiguity was resolved. Consequently, no grounds currently exist to doubt the good faith of the Defendants in the search and subsequent release of relevant documents in this case. Any *in camera* review would be unnecessary and inappropriate, notwithstanding the unsupported allegations of the Plaintiff.

## IV. CONCLUSION.

Upon consideration of the Defendants' Revised Motion for Summary Judgment, the Plaintiff's opposition thereto, the applicable law, and the record herein, the Court finds that the Defendants are entitled to summary judgment against the Plaintiff. The Defendants have conducted an adequate search for records responsive to the Plaintiff's FOIA request, and the responsive information withheld by the Defendants clearly falls within FOIA exemptions (b)(7)(C) and (b)(7)(D). The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

### JUDGMENT

Upon consideration of the Revised Motion for Summary Judgment filed by the Defendants, the Plaintiff's opposition thereto, the applicable law, and for the reasons articulated in this Court's Opinion of even date herewith, it is, by the Court, this 17 day of May, 1993,

ORDERED that the Defendants' Revised Motion for Summary Judgment shall be, and hereby is, GRANTED, and that Judgment in the above-captioned case shall be, and hereby is, entered for the DEFENDANT; and it is

---

3. The Plaintiff claims that some of the confidential informants have been identified through other judicial proceedings. The law of the Circuit is clear, however, that public testimony by confidential sources does not waive the FBI's right to withhold the identity of or information supplied by a confidential source, when the identity or information is not actually revealed in public. *Parker,* 934 F.2d at 379–80. The Plaintiff has presented no evidence of such public revelation in this case.

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the dockets of this Court.