**James Eugene TAYLOR, Plaintiff,**

**v.**

**U.S. DEPARTMENT OF JUSTICE, Defendant.**

**No. CIV.A. 00–2688(RBW).**

United States District Court, District of Columbia.

March 31, 2003.

James Eugene Taylor, Seagoville, TX, pro se.

Wyneva Johnson, U.S. Attorney's Office, Washington, DC, for defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

This action concerns a request made by plaintiff pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000) and the Privacy Act ("PA"), 5 U.S.C. § 552a (2000). Currently before the Court are the defendant's motions to dismiss or, in the alternative, for summary judgment.[1] For the reasons stated below, defendant's motions are granted.

---

**1.** As the passage of time has served to render several of the miscellaneous motions filed by the parties moot, the Court will not address those motions in this Memorandum Opinion,

## I.

At the time plaintiff filed his complaint, plaintiff, who is proceeding *pro se*, was a federal prisoner in Texas. On April 14, 1999,[2] plaintiff submitted a FOIA/PA request to the defendant seeking "all records in agency files located in the FBI's Lexington, Kentucky Field Office[ ]" related to his criminal case, which the plaintiff designated case number 3–97–CR–254–P. Complaint ("Compl.") at 2[3]; Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot. I"), Exhibit ("Ex.") A (FOIA/PA request from James Taylor to Federal Bureau of Investigation ("FBI") dated April 12, 1999). This request was forwarded by the FBI to its Louisville, Kentucky Division office on May 24, 1999, where the responsive documents were ultimately located and a processing number was assigned to plaintiff's request. Compl. at 2. Plaintiff sent a letter to the FBI on June 24, 1999, inquiring as to the status of his request and in response received a letter from the FBI's Louisville, Kentucky office dated June 30, 1999, stating that, due to the large volume of requests, his request could not be acted upon for "several months." *Id.* Plaintiff received a second letter, again from the FBI's Louisville Office, on July 27, 1999,

which indicated that the FOIA/PA information he sought had been located but was "too voluminous" to be processed at the Louisville office, and had been forwarded to FBI headquarters in Washington, D.C. *Id.*

On August 10, 1999, plaintiff sent another letter to the FBI, wherein he attempted to narrow his request to records "relating to James Taylor, Competitive Edge Personnel Services, North Atlantic Consultants Group and Omnicron Corporation." *Id.* at 2–3. A response to this request was received by plaintiff on September 9, 1999, from the FBI's Washington, D.C. headquarters, stating that there were in excess of 25,000 pages responsive to this second request and as a result there would be a delay in processing the request. *Id.* at 3. In an effort to obtain expedited compliance with his request, plaintiff again sought to narrow his request by sending a letter to the FBI on September 14, 1999, in which he requested only the FD 302 reports that would be responsive to his initial request.[4] *Id.* Defendant responded to this third request in a letter dated October 7, 1999, stating that there were 375 documents responsive to this request and that this request had been placed on the " ' small'

although it will issue rulings on them in the order that accompanies this opinion.

Plaintiff mistakenly filed a "Response to Defendant's Answer and Opposition to Request to Dismiss and Request for Affidavits," in which he sought to require the defendant to file its dispositive motions by February 20, 2001. As this pleading was not itself a motion, and as the dates stated in the pleading have passed, the Court will not address this pleading further in this opinion or in the Order that accompanies this opinion.

**2.** In his complaint, plaintiff states that his request was dated April 24, 1999. However, the government states that this request was dated April 14, 1999. The actual letter, at-

tached as Exhibit A to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mot. I"), is dated April 12, 1999, and was notarized by a notary public on April 14, 1999. The Court therefore finds that it is appropriate to conclude that the request was made on April 14.

**3.** References to "Compl." are to the complaint filed by plaintiff in this action on November 7, 2000, which was entitled "Petition to Enforce Disclosure of Requested FOIA/PA Non–Exempt Documents."

**4.** A FD–302 is "a form that contains information from an interview and is maintained in an investigative file." Def.'s Mot. I, Declaration of Scott A. Hodes ("Hodes Decl. I") ¶ 37.

track to process[ing] and would be forthcoming." *Id.*[5]

On May 12, 2000, plaintiff received in excess of 150 pages of FBI 302's, which was "significantly less than the more than 375 previously referred to in the FBI's previous correspondence." *Id.*[6] Plaintiff alleges that over 75 percent of the information had been redacted by the defendant based on "standard, but unsubstantiated and unexplained, blanket FOIA/PA Exemptions." *Id.* Defendant asserts that it withheld the information pursuant to PA Exemption (j)(2) and FOIA Exemptions (b)(7)(C) and (b)(7)(D). *See* Def.'s Mot. I, Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("Def.'s Stmt. I") ¶ 15.

Plaintiff sent a letter to the Department of Justice's ("DOJ") Office of Information and Privacy ("OIP") on August 10, 2000, administratively appealing the extent of the disclosure, and on September 2, 2000, plaintiff sent an expanded FOIA/PA request to the FBI. Compl. at 3–4. After no response was received, plaintiff sent another letter to the OIP on October 2, 2000, administratively appealing the apparent denial of his September 2, 2000, request. *Id.* at 4. By letter dated February 12, 2001, FBI headquarters informed plaintiff that, as a result of his administrative appeal, all 190 pages had been re-processed and additional information was being released. Def.'s Stmt. I ¶ 19.[7] Information was again withheld, however, pursuant to PA

Exemption (j)(2) and FOIA Exemption (b)(7)(C). *Id.*

Plaintiff filed his complaint in this Court on November 11, 2000. Plaintiff then filed a Proposed Scheduling Order and Request for *Vaughn* index[8] on March 26, 2001, to which defendant filed an opposition. On June 14, 2001, defendant filed its initial motion for summary judgment. Plaintiff filed his opposition to this motion on July 3, 2001. In his opposition to defendant's motion, plaintiff raised the issue of his expanded FOIA request that was made on September 2, 2000, which he had pled in his complaint. Upon reviewing the complaint defendant conceded that a fair reading of the complaint included plaintiff's allegations regarding the "Expanded Second FOIA" request. As a result of the volumious nature of the "Expanded Second FOIA" request, defendant filed a Motion for an Open America Stay on August 17, 2001. Plaintiff opposed the FBI's motion for the stay, and on August 27, 2001, plaintiff filed a motion for settlement, seeking to limit his "Expanded Second Request" to solely encompass "any criminal record or criminal case history including any cooperating informant or witness agreements on James Roark and Michael Whitis." On October 25, 2001, defendant filed its Motion for Summary Judgment as to Plaintiff's Narrowed Freedom of Information Act Request ("Def.s' Mot. II"), to which plaintiff filed an opposition.[9]

---

5. In a letter to plaintiff dated February 12, 2001, the FBI informed him that although it had initially estimated there were in excess of 375 pages of documents, "the actual hand count totaled 190 pages." Def.'s Mot. I, Ex. S (Letter to James Taylor from FBI dated February 12, 2001).

6. Defendant states that 190 pages were released to plaintiff. Def.'s Mot. I, Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("Def.'s Stmt. I") ¶ 15.

7. It is not clear from the parties' pleadings or the Hodes declarations exactly what additional information was released to plaintiff.

8. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973).

9. The Court issued an order to plaintiff on November 7, 2002, instructing him that he could file a supplemental response to defendant's motions, in accordance with the dictates of *Fox v. Strickland,* 837 F.2d 507

## II.

The court may grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment in a PA/FOIA case is appropriate, the Court must conduct a *de novo* review of the record. 5 U.S.C. § 552(a)(4)(B). The defendant agency has the burden of justifying the withholding of requested documents. *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C.Cir.1993) (citations omitted).

### A.

Defendant filed its first motion to dismiss, or, in the alternative for summary judgment, on June 14, 2001.[10] This motion addresses plaintiff's request which, by letter dated September 14, 1999, was limited solely to the FD–302s. Def.'s Stmt. I ¶ 11.

As already stated, defendant produced to plaintiff 190 pages of responsive materials, which are redacted. Def.'s Mot. I, Def.'s Stmt. I ¶ 15. In its motion, defendant argues that it has properly withheld information contained in the FD–302's pursuant to PA Exemption (j)(2) and FOIA Exemption (b)(7)(C). Def.'s Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mem. I") at 4. In addition, defendant argues that the declaration of Scott A. Hodes, Acting Unit Chief, Freedom of Information–Privacy Acts Section, Office of Public and Congressional Affairs, FBI Headquarters, ("Hodes Decl. I") suffices as its *Vaughn* index. *Id.* at 6–7. In plaintiff's opposition to defendant's motion, he argues that the defendant's motion fails to address his expanded request and that the Hodes Declaration does not suffice as a *Vaughn* index. Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative for Summary Judgment and Second Request for Vaughn Index ("Pl.'s Opp'n") at 1–2.[11] For the reasons that follow, the Court concludes that the agency has wholly satisfied its burden regarding plaintiff's FD–302 request, and therefore grants the defendant's motion for partial summary judgment regarding this aspect of plaintiff's request.

(D.C.Cir.1988) and *Neal v. Kelly*, 963 F.2d 453 (D.C.Cir.1992). Plaintiff filed a supplemental response to defendant's motion to dismiss or alternatively for summary judgment on November 19, 2002.

**10.** Because the defendant acknowledges that this first motion did not address plaintiff's second request that was made in his letter dated September 2, 2000, for all records pertaining to himself, in accordance with defendant's request, the Court will treat this initial motion as a partial motion for summary judgment. *See* Defendant's Reply to Plaintiff's

Opposition to Defendant's Motion to Dismiss or, in the Alternative for Summary Judgment and Second Request for Vaughn Index (Def.'s Reply) at 2.

**11.** In his opposition, plaintiff also makes arguments concerning the defendant's failure to address plaintiff's second, expanded FOIA request. Because the defendant has filed a separate motion addressing plaintiff's second request, the Court will address the arguments raised by plaintiff regarding that request later in this opinion.

**1. Defendant's *Vaughn* Index**

■ As indicated, defendant argues that the Hodes declaration suffices as its *Vaughn* index for plaintiff's FD 302 request. Plaintiff takes exception with this position.

In a letter dated October 7, 1999, defendant initially informed plaintiff that there were approximately 375 documents that were relevant to plaintiff's FD 302 request. Hodes Decl. I ¶ 16; Def.'s Mot. I Ex. M (Letter to James Taylor from FBI dated October 7, 1999). However, in a letter to plaintiff dated February 12, 2001, the FBI informed plaintiff that although it had estimated that there were over 375 pages of documents responsive to his FD 302 request, "the actual hand count totaled 190 pages." Def.'s Mot., Ex. S (Letter to James Taylor from FBI dated February 12, 2001). The Hodes declaration states that all of the documents, being a part of the FBI's Central Records System ("CRS"), were all "exempt from disclosure under [PA] Exemption (j)(2)." Hodes Decl. I ¶ 33. The records were however, processed pursuant to the FOIA, evaluated for segregability, and allegedly redacted where appropriate. Def.'s Mem. at 17–18.

The District of Columbia Circuit has held that an agency must provide a "detailed justification" in support of any claims of exemption with "adequate specificity." *Vaughn*, 484 F.2d at 826–27. For example, an agency contending that certain parts of a document are exempt could satisfy this standard "by formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document." *Id.* at 827. The defendant has submitted to the Court the 190 pages produced to plaintiff in their redacted form. Def.'s Mot. I Ex. T. Next to each redaction, defendant has indicated which one of six potential categories the redacted information falls into:

(b)(7)(C)–1: Names of FBI Special Agents.

(b)(7)(C)–2: Names and/or identifying data of third parties who provided information to the FBI.

(b)(7)(C)–3: Names and/or identifying data concerning third parties merely mentioned

(b)(7)(C)–4: Names and/or identifying data of third parties who were of investigative interest to the FBI.

(b)(7)(C)–5: Names and/or identifying data regarding Non–FBI Federal Government Employees

(b)(7)(C)–6: Names and/or identifying data regarding State Government Employees

Hodes Decl. ¶ 31.

The Court finds, as further discussed below, that the Hodes declaration, in conjunction with the annotated copies of the 190 redacted pages that were produced to plaintiff, provide a sufficient basis for the Court to ascertain whether the redactions were legally appropriate and therefore qualify as a sufficient *Vaughn* index. *See Keys v. United States Dep't of Justice*, 830 F.2d 337, 349 (D.C.Cir.1987) (holding governmental agency's *Vaughn* index was sufficient where it submitted declarations that "describe[d] in detail the contexts in which all the documents were collected[,]" and contained "a copy of every document, in redacted form, that appellant received . . . and two lengthy affidavits discussing the redactions."); *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir.1988) (stating, in dicta, that although there is "no set formula for a *Vaughn* index[,] . . . the least that is required, is that the requestor and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure") (citations

omitted). Therefore plaintiff's request for a *Vaughn* index is denied because the index has already been provided.

## 2. Documents withheld pursuant to Privacy Act Exemption (j)(2)

 The defendant argues that the documents requested by plaintiff are wholly exempt under PA Exemption (j)(2), 5 U.S.C. § 552a(j)(2). That exemption provides, in part:

> The head of any agency may promulgate rules ... to exempt any system of records within the agency from any part of this section ... if the system of records is—
>
> (2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws ... and which consists of ... (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual ... [12]

Defendant maintains, as stated in one of the Hodes declarations, that the "records at issue in this matter are contained in the FBI's Central Records System ('CRS') and pertain to criminal law enforcement investigations." Def.'s Mem. I at 12; Hodes Decl. I ¶ 33. Specifically, the file containing information responsive to plaintiff's request (196B–LS–64843) "concerns the FBI's Fraud Investigation of plaintiff and other third parties as well as Competitive Edge Personnel Services, Inc., Omicron Holdings Corporation and Mail Services Unlimited." Hodes Decl. I ¶ 28. Plaintiff does not dispute the location or nature of this information. Therefore, the Court concludes that the documents are wholly exempt under PA exemption (j)(2). *See Tamayo v. Dep't of Justice*, 932 F.Supp. 342, 344 (D.D.C.1996) (holding that criminal law enforcement records sought by plaintiff were exempt from disclosure. "[T]he Privacy Act confers no right of access to the records at issue, as they have been exempted from disclosure pursuant to subsection (j)(2) ... as implemented by 28 C.F.R. § 16.96 ... as to the FBI[.]"); *Hatcher v. Dep't of Justice*, 910 F.Supp. 1, 2–3 (D.D.C.1995) (holding that the plaintiff's criminal case files were exempt from disclosure. "The Attorney General has promulgated rules exempting these records from the Privacy Act's access provisions. Therefore, they are not subject to disclosure under the Privacy Act."); *Whittle v. Moschella*, 756 F.Supp. 589, 595–96 (D.D.C.1991) (holding that redactions made "to protect the identities of FBI agents, and both the identities of, and the information supplied by, confidential informants [was proper]. This information was compiled in furtherance of a criminal investigation and is therefore within Exemption j(2).").

However, although the system in which the records are located is exempt, the particular records that were redacted "are only exempt to the extent that their contents are protected by an explicit exemption." *Whittle*, 756 F.Supp. at 595 (citation omitted). Therefore, the Court must next determine whether the documents are protected by the agency's claimed FOIA exemption. *Id.*

## 3. Documents withheld pursuant to FOIA Exemption (b)(7)(C)

 5 U.S.C. § 552(b)(7)(C) exempts from disclosure

---

**12.** The FBI's investigation systems have also been exempted by the Department of Justice in regulations found at 28 C.F.R. § 16.96.

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy ...

FOIA Exemption (b)(7)(C) is designed to protect "from mandatory disclosure records or information compiled for law enforcement purposes to the extent that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Hatcher,* 910 F.Supp. at 3. An agency may only justify its withholding of information pursuant to "Exemption [ (b)(7) ] if: (1) the records were created as part of an investigation related to the enforcement of federal laws and (2) that investigation was within the agency's law enforcement authority." *Whittle,* 756 F.Supp. at 593 (citing *Pratt v. Webster,* 673 F.2d 408, 420–21 (D.C.Cir.1982)).

Satisfaction of Exemption (b)(7)'s first requirement is met where an agency "identif[ies] a particular individual whom it was investigating and the connection between that individual and an alleged violation of federal law." *Id.* (citing *Pratt,* 673 F.2d at 420). In this case, the Hodes declaration satisfies that requirement as it affirms that the file containing documents responsive to plaintiff's request "concerns the FBI's Fraud Investigation of plaintiff and other third parties as well as Competitive Edge Personnel Services, Inc., Omicron Holdings Corporation and Mail Services Unlimited." Hodes Decl. I ¶ 28. *See Whittle,* 756 F.Supp. at 594 (holding that the first prong of the Exemption 7 test was satisfied where the records at issue had been "created as part of the investigation arising out of the plaintiff's allegations that federal laws had been broken ... Indeed, the plaintiff concedes that these records were created as part of a criminal prosecution."); *Williams v. FBI,* 822

F.Supp. 808, 812 (D.D.C.1993) (holding that agency made its "threshold showing to assert Exemption (b)(7) ... [where] the records ... arose from an investigation related to the enforcement of federal law ... [and which] was rationally related to the Defendant's law enforcement duties.").

The second requirement of Exemption (b)(7), *i.e.,* that the investigation was within the agency's law enforcement authority, is also satisfied here, as the FBI is "authorized to investigate the alleged violations of federal laws." *Whittle,* 756 F.Supp. at 594. The Hodes declaration states that the "FBI's authority to conduct [the investigation of plaintiff and other third parties] is Title 18, United States Code, Section 1343." Hodes Decl. I ¶ 28 n. 3. Plaintiff does not dispute this authority and the Court concludes that the FBI unquestionably had the authority to conduct the investigation at issue. *See Whittle,* 756 F.Supp. at 594 (holding that the FBI satisfied its showing that it was authorized to conduct the investigation at issue where it "identifie[d] several sources for its authority to investigate the plaintiff's allegations.").

Next, "the FBI must ordinarily show that in each case the particular subsection of Exemption 7 was properly claimed." *Whittle,* 756 F.Supp. at 594. The defendant has submitted to the Court for its inspection the 190 pages produced to plaintiff in their redacted form. Def.'s Mot. I Ex. T. Next to each redaction, defendant has indicted which of six potential categories the redacted information falls under:

(b)(7)(C)–1: Names of FBI Special Agents.

(b)(7)(C)–2: Names and/or identifying data of third parties who provided information to the FBI.

(b)(7)(C)–3: Names and/or identifying data concerning third parties merely mentioned

(b)(7)(C)–4: Names and/or identifying data of third parties who were of investigative interest to the FBI.

(b)(7)(C)–5: Names and/or identifying data regarding Non–FBI Federal Government Employees

(b)(7)(C)–6: Names and/or identifying data regarding State Government Employees

Hodes Decl. I ¶ 31.

■ "Exemption 7(C) insulates from release records whose disclosure could reasonably be expected to constitute an unwarranted invasion of privacy.... As the term unwarranted implies, Exemption 7(C) requires the Court to balance the public interest in disclosure against the privacy interests involved." *Whittle*, 756 F.Supp. at 595 (citing *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 (D.C.Cir.1987)). It is the plaintiff's burden to demonstrate "the substantial and compelling nature of the public interest to be served by disclosure." ` *Id.*

■ The Court finds that the information was properly withheld from the plaintiff. "Exemption (b)(7)(C) was asserted to protect the identities of and personal information about third party individuals, special agents, government employees and local law enforcement personnel who participated in the investigation and prosecution of the Plaintiff." *Hatcher*, 910 F.Supp. at 3. Likewise, in this case, the Hodes declaration clearly delineates the categories of persons whose identities and other identifying characteristics, such as social security numbers and addresses, were redacted in order to protect the individuals' rights to privacy. These types of redactions comport with the purpose for which exemption (b)(7)(C) was designed

and therefore the Court concludes that the redacted material has been properly withheld. *See Reporters Comm.*, 489 U.S. at 766, 109 S.Ct. 1468 (noting that FOIA's provisions, that provide for "deletion of identifying references and disclosure of segregable portions of records with exempt information deleted, reflect a congressional understanding that disclosure of records containing personal details about private citizens can infringe significantly privacy interests."); *see also Tamayo*, 932 F.Supp. at 344 (holding that the defendant agencies properly "invoked Exemption 7(C) of the FOIA to protect the identities of: agents and support personnel of the FBI, DEA, and the Customs Service; nonfederal law enforcement officers mentioned in records of the DEA and Customs Service; and third parties of investigative interest to the FBI, DEA, and the Custom Service."); *Hatcher*, 910 F.Supp. at 3 (holding records that "pertain[ed] to the investigation and prosecution of Plaintiff and others for narcotics-related offenses[,]" was exempted from disclosure pursuant to exemption (b)(7)(C)); *Williams*, 822 F.Supp. at 812–13 (holding that records containing the names and identities of persons involved in criminal investigation were exempt from disclosure. " 'Exemption 7(C) affords broad privacy rights to suspects, witnesses, and investigators' in criminal investigations.' "); *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F.Supp. 851, 855 (D.D.C.1989) (holding that documents related to surveillance conducted during a drug investigation that contained 'names, addresses, and phone numbers which would reveal the identity and disclose information about persons who were implicated, involved or associated with' the surveillance" were exempt from disclosure pursuant to Exemption 7(C)).

■ The Court is mindful that it must "balance the public interest in disclosure against the privacy interests involved" in determining whether disclosure should be made. *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990) (when applying Exemption (7)(C), court must "first identify the privacy interests at stake ... [and] second, the court must identify the public interest in disclosure."); *Whittle*, 756 F.Supp. at 595. It is clear to the Court that the individuals referenced in the documents at issue have a clear interest in not having their identities revealed. *See* Hodes Decl. I ¶¶ 36–44, discussed *infra*, at 19. Plaintiff, however, argues that the information should be disclosed because there is a strong public interest in disclosing the information because it could be Brady Material and would assist plaintiff in his "filings in criminal court for the northern district of Texas regarding Brady violations." [13] Pl.'s Supp. at 2. The Court is not unsympathetic to plaintiff's desire to obtain such information, if it exists, although it is clear that the disclosure would not be in the public's interest but rather in plaintiff's private interest. *See Beck*, 997 F.2d at 1491 ("The Supreme Court has defined the public interest against which the protected privacy interests are to be balanced as 'the citizens' right to be informed about what their government is up to.") (citations omitted); *Burke v. Dep't of Justice*, No. Civ.A. 96–1739, 1999 WL 1032814, at *4 (D.D.C. Sept.30, 1999) ("The courts have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction.") (citations omit-

ted); *Williams*, 822 F.Supp. at 813 (stating that there was no public interest in the disclosure of documents pertaining to a criminal investigation of plaintiff where "[t]he information contained in the withheld portions of the relevant documents will *not* 'shed [ ] light on an agency's performance of its statutory duties ...' and was not 'probative of an agency's behavior or performance.' ... Absent evidence of such agency misconduct, an agency need not disclose the names and identifying descriptions of individuals supplying information to the agency in the law enforcement context.") (emphasis in original) (citations omitted); *Albuquerque Publ'g Co.*, 726 F.Supp. at 856 (holding that there was no compelling public interest in disclosure of documents pertaining to surveillance conducted in regards to drug investigation where plaintiff sought to learn 'the complete truth' about what happened. "[P]laintiff is not primarily interested in DEA's conduct with respect to its investigation ... but rather in the information DEA obtained about these individuals and their activities ...").

"Given the substantial privacy interests in the information withheld in this case, the public interest in disclosure of the identity of the individuals must be great in order to justify the release of the information." *See Williams*, 822 F.Supp. at 813. The Court concludes that no public interest exists in this case sufficient to outweigh the privacy interests at stake. As stated in the Hodes declaration, disclosure of the information sought could result in harassment, or even bodily injury, to those who are sought to be protected. Hodes Decl. I ¶¶ 36–44. Particularly with regard

---

**13.** Plaintiff is referencing the Supreme Court case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which imposes an independent obligation on the government, *i.e.*, prosecutors, to disclose to criminal defendants, like plaintiff, in connec-

tion with their criminal cases, any potentially exculpatory information the government has in its possession. Plaintiff has proffered nothing of substance that even suggests that the government has not complied with this constitutional obligation.

to the redacted information provided by confidential informants, law enforcement's and the public's interest lie with the ability to obtain confidential information leading to criminal prosecutions, which could be hampered if individuals feared that their identities could be later revealed. *See Williams,* 822 F.Supp. at 813 (holding that withholding of information pursuant to Exemption 7(C) was justified where the information contained the names of witnesses, suspects, and other third parties involved in a criminal investigation. "Obviously, any individual who participates in a law enforcement investigation has a strong privacy interest in keeping his or her name, together with any details that would tend to identify the individual, from the public view."); *Whittle,* 756 F.Supp. at 595 (holding that withholding of information pursuant to Exemption 7(C) was warranted where "the Court d[id] not perceive[ ] any public interest that would be served by the disclosure of the names of confidential informants, the information they provided, or the names of FBI agents who investigated the matter."). And, it is significant to note that if the redacted information contains exculpatory information, defendant, through its prosecution arm, had an independent constitutional obligation to produce it to the plaintiff during the course of his prosecution. *See* footnote 13, *supra.* The Court has no reason to believe that a transgression of this obligation has occurred. For these reasons, the Court grants defendant's Motion for Partial Summary Judgment regarding plaintiff's request for FD 302's related to his investigation.

### C.

In his complaint, plaintiff references his "successive, expanded FOIA/PA [r]equest"

that he submitted to the FBI on September 2, 2000. Compl. at 4. In this request, plaintiff sought the investigative file pertaining to himself; correspondence from himself or North Atlantic Consultants or referring to himself; any wire tap or other electronic surveillance or computer data gathered regarding plaintiff or North Atlantic Consultants; and any criminal records pertaining to James Roark and Michael Whitis, including any cooperating informant or witness agreements. Plaintiff's Opposition to Defendant's Motion for an Open America Stay ("Pl.'s Stay Opp'n"), Ex. B (Letter to FBI from James Taylor dated September 2, 2000).

On August 17, 2001, the defendant filed a motion for an Open America Stay, in which it requested that the Court stay any proceedings regarding plaintiff's lawsuit until June 30, 2004, to permit the "FBI to process and release the approximately 25,-000 pages of documents responsive to the plaintiff's second request for documents concerning himself, prepare a *Vaughn* index and to draft a dispositive motion." Defendant Federal Bureau of Investigation's Motion for an Open America Stay ("Def's Stay Mot.") at 2. Plaintiff filed an opposition to this motion on August 27, 2001, in which he stated that "all the [d]efendant .... had to do [was] communicate with the [p]laintiff to narrow the request." Pl.'s Stay Opp'n at 2. On the same day he filed his opposition to the defendant's request for a stay, plaintiff filed a Motion for Settlement in which he stated that he would agree to limit his request to "any criminal record or criminal history, including any cooperating informant or witness agreements on James Roark, and Michael Whitis." [14] Plaintiff sought production of

---

**14.** Plaintiff has filed several motions for settlement in which he requests essentially the same information. These other motions are

stamped by the Clerk's office as being filed on November 13, 2001, and August 13, 2002. In his August 13, 2002, Revised Motion for Set-

this information no later than October 1, 2001. *Id.* On October 25, 2001, defendant filed a reply to plaintiff's motion for settlement in which it agreed to the narrowing of plaintiff's request, however, the defendant continued to maintain that the information sought by plaintiff was still exempt under the FOIA and PA. Defendant's Reply to Plaintiff's Motion for Settlement at 1. Defendant filed its second motion for summary judgment regarding plaintiff's narrowed request on the same date.

In its Motion for Summary Judgment as to Plaintiff's Narrowed Freedom of Information Act Request ("Def.'s Mot. II"), the defendant states that it "neither confirms nor denies the existence of the requested information." Def.'s Mot. II, Statement of Material Facts Not in Genuine Dispute ("Def.'s Stmt. II") ¶ 10. Defendant states, however, that if any such information does exist, "the information would be withheld pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(D) and 5 U.S.C. § 552a(b)." *Id.*

■ In pertinent part, the PA provides that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be-
>
> (2) required under section 552 of this title.[15]

The PA "prohibits the FBI from disclosing information about a living third party without a written privacy waiver, unless FOIA requires disclosure." *Burke,* 1999 WL 1032814, at *3. In this case, because plaintiff has not provided the written consent of either Mr. Roark or Mr. Whitis, the agency was prohibited from disclosing the information plaintiff sought, unless disclosure was required pursuant to the FOIA. *Id.*

■ The Court must therefore address whether the documents requested by plaintiff are exempted under the FOIA. A preliminary issue must be addressed first, however, regarding the adequacy of the agency's response. In its response to plaintiff's request, the FBI has neither confirmed nor denied the existence of documents responsive to plaintiff's request. Such a response, in which an agency neither confirms nor denies the existence of responsive records, is called a Glomar response[16]. *Benavides v. Drug Enforcement Admin.,* 976 F.2d 751, 752 (D.C.Cir. 1992); *Burke,* 1999 WL 1032814, at *5. This type of response is appropriate where "members of the public may draw adverse inferences from the mere fact that an individual is mentioned in the investigative files of a criminal law-enforcement agency." *Id.* (citation omitted). Where a request is made solely for law-enforcement files, "the agency may simply 'Glomarize' (i.e., refuse to confirm or deny whether such files exist as to the third party)." *Id.*

tlement, plaintiff narrowed his request for information regarding "any criminal record or criminal history as it relates to fraud, insurance fraud, arson, and theft on James Roark, and Michael Whitis."

**15.** The Act provides twelve exception categories, however, the Court will only address the FOIA exception, as none of the other exceptions are applicable to plaintiff's situation.

**16.** The response is titled for the secret United States government ocean vessel, the Hughes Glomar Explorer, "which was the subject of records sought in a FOIA request." *Burke,* 1999 WL 1032814, at *5 n. 8 (citing *Phillippi v. CIA,* 546 F.2d 1009 (D.C.Cir.1976)); *Benavides v. Drug Enforcement Admin.,* 976 F.2d 751, 752 (D.C.Cir.1992).

(citation omitted).[17] Plaintiff's request having been limited to law enforcement investigative files, the FBI properly refused to either confirm or deny the existence of the records plaintiff seeks to obtain.

The Court need not address all of the defendant's proffered exemptions, as it concludes that the records are clearly exempt under FOIA Exemption 7(C).[18] *See Reporters Comm.*, 489 U.S. at 762 n. 12, 109 S.Ct. 1468 ("Because Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6."); *Dunkelberger*, 906 F.2d at 780–81 (affirming district court's grant of summary judgment to defendant agency on the basis of FOIA Exemption 7(C) and not addressing the agency's claimed exemption under FOIA Exemption 6 because the district court did not base its ruling on Exemption 6).

"Under Exemption 7C, records or information compiled for law-enforcement purposes are protected from disclosure whenever such disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Burke*, 1999 WL 1032814, at *4 (quoting 5 U.S.C.

§ 552(b)(7)). The records plaintiff seeks, namely, "[a]ny criminal record or criminal history ... on James Roark, and Michael Whitis"[19] are precisely the sort of documents that have routinely been held to be protected from disclosure under Exemption 7(C). *See Reporters Comm.*, 489 U.S. at 762–63, 109 S.Ct. 1468 (holding that "rap sheet" *i.e.*, criminal records, of third party was protected from disclosure under Exemption 7(C). "Because events summarized in a rap sheet have been previously disclosed to the public, respondents contend that [the third person]'s privacy interest in avoiding disclosure of a federal compilation of these events approaches zero. We reject respondents' cramped notion of personal privacy."); *Burke*, 1999 WL 1032814, at *4 (holding that FBI properly neither confirmed or denied the existence of law-enforcement records pertaining to third parties and that such records were protected under Exemption 7(C)); *Albuquerque Publ'g Co.*, 726 F.Supp. at 855 (holding that records pertaining to surveillance conducted regarding drug investigation were exempted from disclosure pursuant to Exemption 7(C). "*Reporters Committee* and decisions in this Circuit indicate that individuals have a substantial

---

17. The Court notes that, as stated in the fourth Hodes declaration, there are four instances when the FBI "will deem that the subject of a third party request has either lost or waived most, if not all, of the otherwise inherent privacy interests." Def.'s Mot. II, Ex. A (Fourth Declaration of Scott A. Hodes) ("Hodes Decl. IV") ¶ 13. These instances are when:

(a) the subject of a request is deceased,
(b) the subject has provided a notarized authorization (privacy waiver) allowing the release of information to the requester;
(c) the Department of Justice has previously officially acknowledged the existence of records, or (d) the requester demonstrates that the public's interest in the disclosure outweighs privacy interests.

*Id.*

18. In addition to claiming the applicability of the PA and FOIA Exemption 7(C), the FBI claims that the documents at issue are also exempt under FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy[,]" 5 U.S.C. § 552(b)(6) and FOIA Exemption 7(D), which protects documents that "could reasonably be expected to disclose the identity of a confidential source ...[,]" 5 U.S.C. § 552(b)(7)(D).

19. The Court's holding encompasses plaintiff's revised request, wherein he sought "[a]ny criminal record or criminal history as it relates to fraud, insurance fraud, arson, and theft, on James Roark, and Michael Whitis." Plaintiff's Revised Motion for Settlement.

privacy interest in information that either confirms or suggests that they may have been subject to a criminal investigation.") (citations omitted).

Again, in determining the applicability of FOIA Exemption 7(C), the Court is cognizant that it must balance the privacy interests of the third parties against any public interest that might be served by disclosure.[20] *Whittle*, 756 F.Supp. at 595. "In determining whether a privacy interest exists in records related to law-enforcement agencies, it is well established that 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Burke*, 1999 WL 1032814, at *4 (citations omitted) (holding that investigative records pertaining to third parties were protected from disclosure by FOIA Exemption 7(C)). And, similarly, it is clear that the public's interest in disclosure "is not furthered ... by disclosure of information about individuals 'that is accumulated in ... governmental files but that reveals little or nothing about an agency's own conduct." *Albuquerque*, 726 F.Supp. at 855. Therefore, the Court must once again conclude that there is no public interest sufficient to override the substantial privacy interests at stake if the information were disclosed.

Finally, plaintiff repeatedly asserts that this Court should conduct an *in camera* inspection of the documents at issue "to determine whether such records or any part thereof shall be withheld under any of the [statutory] exemptions." Plaintiff's Supplemental Response to Defendant's

Motions to Dismiss or Alternatively for Summary Judgment ("Pl.'s Supp."), Affidavit of James E. Taylor ("Taylor Aff.") ¶ 3 (citations omitted). Plaintiff cites as authority for his position *Albuquerque Publ'g Co.*, 726 F.Supp. at 857, where the court found it necessary to conduct an *in camera* review. In *Albuquerque Publ'g Co.*, the court found *in camera* inspection necessary for the limited purpose of reviewing documents withheld by the agency on the basis of FOIA Exemption 7(E), which "pertains to investigative techniques and procedures generally unknown to the public." *Id.* However, the *Albuquerque Publ'g Co.* court found such review necessitated by the fact that the agency had provided the court "with insufficient information about the nature of the techniques[ ]" at issue. *Id.* Significantly, the court upheld the agency's withholdings pursuant to FOIA Exemptions 7(C) and 7(D) without an *in camera* inspection.

■ The Court finds that no such inspection is warranted here. The defendant's declaration and its *Vaughn* index sufficiently provide the Court with information about the nature of the withheld documents and the redactions, and thus no *in camera* review is needed to further assist the Court in deciding whether disclosure is required. *See Hatcher*, 910 F.Supp. at 3 (denying requestor's request for *in camera* review of withheld and redacted documents where the "Vaughn Index ... and ... affidavit ... adequately describe[d] the withheld documents and redactions, the claimed exemptions and the reason why such exemptions are applica-

---

**20.** In his Reply to Defendant's Response to Motion for Settlement, plaintiff asserts that he "has the names of the individuals and the information as to their whereabouts, including phone numbers. The [p]laintiff's family members have known these individuals for some time now." However, it is well established that "[t]he fact that the requestor might be able to figure out some or all of the individuals' identities through other means, or the fact that their identities have already been disclosed, does not diminish their privacy interests in not having the documents disclosed." *Burke*, 1999 WL 1032814, at *4 (citing *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C.Cir.1984)).

ble.... Therefore, no *in camera* inspection [was] necessary."). (citation omitted). Because the agency in this case has provided the Court with sufficient justification for its claimed exemption, the Court finds that no *in camera* review is warranted. Accordingly, plaintiff's request for *in camera* review is denied.

SO ORDERED on this 1st day of April, 2003.[21]

### ORDER

In accordance with the Memorandum Opinion that is being issued contemporaneously with this Order, it is hereby

**ORDERED** that plaintiff's Proposed Scheduling Order and Request for *Vaughn* Index [# 7] is denied as moot. It is further

**ORDERED** that defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [# 11] is granted. It is further

**ORDERED** that Defendant's Motion for an Open America Stay [# 21] is denied as moot. It is further

**ORDERED** that plaintiff's Motion for Settlement [# 24] is denied. It is further

**ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff's Narrowed FOIA Request [# 34] is granted. It is further

**ORDERED** that plaintiff's Revised Motion for Settlement [# 36] is granted in part and denied in part. The Court will permit plaintiff to limit the scope of his request as indicated. However, the Court

denies plaintiff's request for *in camera* review of the material. It is further

**ORDERED** that Defendant's Motion for a Protective Order [# 39] is denied as moot.[22] It is further

**ORDERED** that Plaintiff's Motion for Settlement [# 40] is denied.

---

21. An order consistent with the Court's ruling accompanies this opinion.

22. A copy of this pleading could not be located in the Court's chamber file or the Clerk's official file. Defense counsel was contacted and asked to submit another copy to the Court's chambers, which she failed to do within the time requested. As the Court is granting summary judgment to the defendant regarding all aspects of plaintiff's complaint, it finds that any pending motions have been rendered moot.